

U.S. Department of Justice

United States Attorney
Eastern District of New York

WK:DG
F. #2015R01973

271 Cadman Plaza East
Brooklyn, New York 11201

July 11, 2018

By Hand and ECF

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Clarence Clark
                 Criminal Docket No. 15-638 (MKB)

Dear Judge Brodie:

        The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for July 19, 2018.

I.    Facts

        Between on or about July 21, 2015, and October 12, 2015, the defendant Clarence Clark committed five armed robberies. See Presentence Investigation Report ("PSR") ¶¶ 3-7. The first robbery occurred on July 21, 2015, outside a playground in Brooklyn (the "Street Robbery"). Id. ¶ 3. The subsequent four robberies occurred on August 31, 2015, September 3, 2015, September 25, 2015, and October 12, 2015, in grocery stores in Brooklyn, Queens and Staten Island (the "Store Robberies"). Id. ¶¶ 4-7. Clark committed the first four robberies with his co-conspirator, Charles Gelzer. Clark committed the final robbery with an unidentified co-conspirator. Id. ¶ 7.

        In the Street Robbery, which occurred after 11:00 p.m. on July 21, 2015, the defendant and Gelzer approached two victims outside a playground in Brooklyn. The defendant brandished a red firearm and Gelzer brandished a silver firearm. The men robbed the victims of cash, cellular phones, and other personal items. See id. ¶ 3.

        On August 31, 2015, Clark and Gelzer robbed the AH&F Grocery Store, located at 2811 Ocean Avenue in Brooklyn. Id. ¶ 4. On September 3, 2015, they robbed the 35 Deli & Grocery Store, located at 180 Bay 35 Street in Brooklyn. Id. ¶ 5. On September 25, 2015, they robbed the Flushing Avenue Deli & Grocery in Queens, located at 63-22 Flushing Avenue in Queens. Id. ¶ 6. On October 12, 2015, Clark and an unidentified co-conspirator robbed M&M

Bagels store located at 1609 Victory Boulevard in Staten Island of cash, cigarettes, and other merchandise. Id. ¶ 7.

Each of the Store Robberies was conducted in a similar manner: the men entered a grocery store; brandished firearms; wore masks; and stole, among other things, cash and cellular telephones. In the first three Store Robberies, Clark brandished a red firearm, Gelzer brandished a silver firearm, and Clark provided Gelzer with a blue drawstring bag to carry the stolen money. See id. ¶¶ 2, 4-6.

In the October 12, 2015 Store Robbery, which involved the defendant and an unidentified co-conspirator, the robbers pointed a red gun at a store employee and directed him to the floor. The robbers then directed another employee to provide them with cash. See id. ¶ 7.

## II. Procedural Background

On May 23, 2016, a Grand Jury in the Eastern District of New York returned a six-count Superseding Indictment charging Clark and Gelzer with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count I); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts II-V); and possessing and brandishing a firearm during crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(ii) (Count VI). The Superseding Indictment charged the defendant with four substantive counts of Hobbs Act robbery (Counts II-V); one count for each of the Store Robberies described above.[1]

On May 10, 2017, Gelzer, who pleaded guilty to Counts IV and VI of the Superseding Indictment, was sentenced to 96 months' imprisonment.

On September 14, 2017, the defendant pleaded guilty to Counts V and VI of the Superseding Indictment, i.e., the October 12, 2015 Hobbs Act robbery of the M&M Bagels store in Staten Island (Count V), and brandishing a firearm during that robbery (Count VI). See id. ¶ 1.

## III. Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR. See PSR ¶¶ 19-39, 82. That calculation, which results in an effective range of imprisonment of 121 to 130 months, is based on: (i) a Guidelines range of 37-46 months' imprisonment for the Hobbs Act robbery; and (ii) a consecutive mandatory minimum seven-year term of imprisonment for the violation of 18 U.S.C. § 924(c)(1)(A)(ii). Id. ¶ 82. As set forth in the PSR, the defendant falls within Criminal History Category IV. Id. ¶ 46.[2]

---

[1] Gelzer was not charged in Count V, which charged Hobbs Act robbery in connection with the October 12, 2015 robbery.

[2] In its plea agreement with the defendant, the government estimated that the defendant was in Criminal History Category III. Although the government agrees that the defendant is in Criminal History Category IV, the government requests a sentence based on the estimated Guidelines range in its plea agreement, i.e., 114 to 121 months' imprisonment.

2

The defendant has been in custody since his April 25, 2016 arrest.

IV.   The Appropriate Sentence

The government respectfully requests that the Court impose a sentence between 114 and 121 months in prison, the estimated Guidelines range in the parties' plea agreement.[3] The primary factors justifying a Guidelines sentence in this case are the seriousness of the offense and the need to protect the public. 18 U.S.C. §§ 3553(a)(2)(A), (C).

As described in detail in the PSR, the defendant and his co-conspirators brandished firearms while robbing innocent victims in five armed robberies. In the September 3, September 25 and October 12, 2015 robberies, the defendant and his co-conspirators ordered victims to lie on the ground while they stole money and employee cellular phones. In the August 31, 2015 robbery, the defendant and Gelzer displayed their firearms close to a child who sat behind the store counter while the robbery took place. See id. ¶ 4.

The defendant's criminal history dates back to his conviction for attempted strong armed robbery in 2007, when he was thirteen years old. PSR ¶ 40. Since then, the defendant has been convicted of arson, criminal possession of a weapon, and the instant armed robbery. See id. ¶¶ 42, 43. The defendant's unlawful conduct has occurred both in and out of custody: the defendant committed arson while in custody in South Carolina and, between his April 2016 arrest and December 2017, the defendant incurred more than twenty infractions at the Metropolitan Detention Center, including multiple assaults and threats of bodily harm. See id. ¶ 60. This extensive criminal history underscores the need to protect the public from further crimes of the defendant.

In his July 9, 2018 sentencing letter, the defendant contends that his personal background (specifically, that he grew up without his parents) and mental health conditions warrant a downward variance. See Def.'s Sentencing Ltr. (Dkt. No. 78) at 6-8.[4] The defendant's personal history should be considered under 18 U.S.C. § 3553(a), but it does not, on its own, take this case out of the heartland of violent armed robberies.

With regard to the defendant's mental health conditions, the government agrees that the defendant's mental health should be considered in determining the appropriate sentence in this case and respectfully submits that, regardless of the length of the term of imprisonment

---

[3] As noted in the PSR, the Guidelines range of 121-130 months' imprisonment set forth in the PSR (and, likewise, the range of 114-121 months set forth in the plea agreement) does not account for the August 31, 2015, September 3, 2015, and September 25, 2015 Hobbs Act robberies that the defendant committed. See PSR ¶¶ 4-6.

[4] The defendant also contends that his drug addiction warrants a downward variance. Def.'s Sentencing Ltr. at 7. As the defendant notes, the Guidelines provide that "[d]rug or alcohol dependence or abuse ordinarily is not a reason for a downward departure." See U.S.S.G. § 5H1.4.

imposed, mental health treatment should be ordered both during the defendant's incarceration and as a condition of his supervised release. See 18 U.S.C. § 3553(a)(2)(D). Mental health treatment was a condition of the defendant's parole in connection with his juvenile offense in South Carolina and, according to the PSR, the defendant did not adjust well to his prior treatment. See PSR ¶ 68. Nevertheless, to the extent mental health treatment is successful in the future, it may serve the dual purpose of providing the defendant with rehabilitation and, potentially, protecting the public from future crimes.

V.      Conclusion

    The offense in this case was very serious. In addition, based on the record, there is a serious risk that, upon his release from prison, the defendant will continue to commit violent crimes. Primarily for these reasons, the government respectfully requests that the Court impose a sentence between 114 and 121 months' imprisonment.

              Respectfully submitted,

              RICHARD P. DONOGHUE
              United States Attorney

      By:  /s/ David Gopstein
              David Gopstein
              Assistant U.S. Attorney
              (718) 254-6153

cc: Richard B. Lind, Esq.